UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PATRICK J. O'CONNELL,

                Plaintiff,

                                                **Hon. Hugh B. Scott**

             v.                                     10CV46A

                                                        **Report
and
Recommendation**

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 6 (plaintiff)[1], 7 (defendant)[2]).

## **INTRODUCTION**

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits (Docket No. 1, Compl.).

---

[1] In support of his motion, plaintiff submits his memorandum of law, Docket No. 6; his reply memorandum to defendant's motion, Docket No. 9. In opposition is defendant's cross motion for judgment on the pleadings, Docket No. 7, described below; the Commissioner's reply memorandum to plaintiff's motion, Docket No. 10.

[2] In support of his motion, Docket No. 7, defendant submits the administrative record (manually filed Mar. 29, 2010); his memorandum in support, Docket No. 8; and his reply memorandum to plaintiff's motion, Docket No. 10. In opposition, plaintiff submits his motion and moving papers discussed above, Docket Nos. 6, 9.

## PROCEDURAL BACKGROUND

The plaintiff, Patrick J. O'Connell ("O'Connell" or "plaintiff"), filed an application for disability insurance benefits on December 5, 2005. That application was denied initially and on reconsideration. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated January 26, 2009, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on January 6, 2010, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on January 21, 2010 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 6, 7). The motions were argued and submitted on submitted on papers on August 24, 2010 (see Docket No. 11).

## FACTUAL BACKGROUND[3]

Plaintiff claims that the ALJ erroneously found that he was not disabled for the period he claims, from the onset date of June 1, 2005, through January 26, 2009, the date of the ALJ's decision (see Docket No. 6, Pl. Memo. at 1). Plaintiff has a high school equivalency diploma ("GED") (R. 412-13; see R. 57). He was forty-nine years old as of his alleged onset of disability and was fifty-two years old on the date of the ALJ's decision (R. 415; see R. 31). Plaintiff testified that his biggest impediments to working were vertigo and joint pain (R. 424), claiming that he was prone to episodes of vertigo (id.) and back and neck pain as well as pain in his shoulders and ankles (R. 427-29, 432). He also alleges that diabetes, hearing loss, and

---

[3] References noted as "(R.__)" are to the certified record of the administrative proceedings.

headaches impede his work.  (See Docket No. 8, Def. Memo. at 2-3.)  Prior to his claim, plaintiff worked as a roofer from 1985 to 2003, later working as a carpenter's helper at a restaurant but stopped working there due to dizziness (R. 20).  Plaintiff fell two times and knocked out a tooth (id.).

## MEDICAL AND VOCATIONAL EVIDENCE

The parties agree to defendant's recitation of the medical evidence in the administrative record (see Docket No. 6, Pl. Memo. at 2).

ALJ Bruce Mazzarella first notes that plaintiff's "biggest problem is bone and joint pain along with vertigo" (R. 20).  The ALJ found that plaintiff had severe impairments, due to frozen shoulder, right ear surgery with loss of hearing requiring a hearing aid, osteoporosis of the spine, and mild degenerative disc disease of the cervical spine, but found other conditions claimed were not severe and, for those impairments found to be severe, he concluded that plaintiff did not have an impairment or combination of impairments to meet or medically equal those recognized in Social Security regulations (R. 18-19).  ALJ Mazzarella found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the ALJ's residual functional capacity assessment (R. 20).  On the vertigo, the ALJ states that plaintiff denied any episodes of vertigo in April 2006 (R. 21, 305) but in 2008 plaintiff stated that he had vertigo, describing those episodes as occurring only when he stood or sat and were for a few minutes, with those episodes improving with medication (R. 21, 347, 256).

As for plaintiff's bone and joint pain complaints, the ALJ noted that plaintiff's x-rays revealed only degenerative disc disease at C4-C5 with only mild retrolisthesis (R. 21) and

3

without a detected limitation in his range of motion and an MRI showing only a small disc bulge and no herniation (R. 21, 329, 315). A December 2007 x-ray showed mild vertebral spurring (R. 22, 269). While noting that Dr. Marc Fineberg stated that plaintiff was totally disabled while he was manipulating his shoulder, the ALJ states that plaintiff's later physical therapy revealed "good recovery in range of motion and strength below shoulder level with a relatively short period of time (February 2007 to June 2007)" (R. 23). The ALJ denied that Dr. Jon Kucera's opinion of plaintiff's disability was supported by any evidence in the record (R. 22, 23).

The ALJ asked Jay Steinbrenner, an impartial vocational expert, to consider a hypothetical individual with the same age, education, and past work experience as plaintiff (R. 452). Such individual was able to sit, stand, and walk with only normal breaks and meal periods, during the course of an eight-hour workday (R. 453). He could lift and carry twenty pounds occasionally and ten pounds frequently. He should not lift above shoulder level; work with his arms above shoulder level; work at unprotected heights; do work that required balancing; nor work in noisy environments without the aid of protective devices, ear muffs, or ear plugs. (Id.) The vocational expert opined that such an individual could perform work which existed in the national economy (R. 454). He cited courier or messenger (119,619 jobs nationally), cashier II (1,456,000 jobs nationally), and light cleaning (1,014,131 jobs nationally) as examples of such unskilled, light exertional work listed in the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT") (R. 454-56).[4] The ALJ then concluded that plaintiff

---

[4] See DOT Job Codes 230.663-010, 211.462-010, and 323.687-014, respectively (4th ed. rev. 1991), Docket No. 8, Def. Memo. at 4 n.2.

had the residual functional capacity to perform light work, under the conditions stated by the vocational expert (R. 19).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that his impairment prevents him from returning to his previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.

1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

> (1) whether the plaintiff is currently working;
>
> (2) whether the plaintiff suffers from a severe impairment;
>
> (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
> (4) whether the impairment prevents the plaintiff from continuing his past relevant work; and
>
> (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing his past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work he has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care

must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to his past relevant work given his residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, plaintiff argues that the ALJ failed to again contact his treating physicians, in particular Drs. Jon Kucera and Marc Fineberg (Docket No. 6, Pl. Memo. at 4-7). He contends that the ALJ further erred in failing to assess properly the opinion of these treating physicians under SSR 96-2p (id. at 8-9). Plaintiff concludes that the ALJ erroneously substituted his opinion for that of plaintiff's medical experts in concluding that plaintiff was not disabled and that the medical record supported finding that he could perform light work (id. at 10-12) and did not properly assess plaintiff's subjective complaints (id. at 12-13).

I.   ALJ and Follow up with Treating Physicians

Plaintiff argues that the ALJ should have followed up with Drs. Kucera and Fineberg if there were any further questions about plaintiff's condition. He contends that the ALJ's failure to seek further information taints his reliance upon his own opinion and in that he did not properly assessing these doctors' medical opinions (Docket No. 6, Pl. Memo. at 9, 11). Dr. Kucera, plaintiff's long-time treating primary care physician, stated several times that plaintiff was "very limited" in walking, standing, lifting, carrying, pushing, pulling, bending, and stairs or other

climbing, and stated he was "unable to walk, stand, lift." (Id. at 5; R. 363-64, 367-68. 369-70, 371-72). Additionally, Dr. Fineberg stated in June of 2007 that Plaintiff was "totally temporarily disabled from all employment," and that he was not capable of participating in work activities at that time due to his shoulder problems. The doctor also listed the prognosis relating to those problems as "guarded." (Docket No. 6, Pl. Memo. at 5; R. 365-66).

Defendant counters that the medical record, primarily the findings of the consultative physician Dr. Fenwei Meng, demonstrated that plaintiff was not disabled, in particular that plaintiff had no limitations with dexterity or gross activities with his joints (see Docket No. 10, Def. Reply Memo. at 3-5; R. 171). He notes that Dr. Kucera assessed no limitations on plaintiff's hands (Docket No. 10, Def. Reply Memo. at 3; R. 243).

As discussed below regarding Dr. Fineberg, the ALJ erred in not seeking supplemental information about plaintiff's condition following Dr. Fineberg's June 2007assessment to determine if plaintiff's temporary disability still existed (or existed for more than twelve months to deem it to be a "disability" under the Social Security program).

II.     ALJ's Regard of Opinion of Treating Physicians

Next, plaintiff faults the ALJ for not giving sufficient weight to the opinions of Drs. Kucera and Fineberg and their conclusions that plaintiff was disabled (Docket No. 6, Pl. Memo. at 8-9, 5; R. 363-64, 369-70, 365-66; see also R. 367-68, 371-72 (duplicates of R. 363-64)). Although the ALJ noted these opinions, he did not state what weight he assessed those opinions and, plaintiff concludes, gave these opinions short shrift (id.).

8

Social Security Ruling 96-2p specifically provides:

"the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

SSR 96-2p at *4. Plaintiff argues that the ALJ here failed to give specific reasons for the weight apparently given to these treating physicians in disregarding their opinion and that a treating physician's findings are binding upon the Commissioner unless contradicted by substantial evidence, Bluvband v. Heckler, 730 F.2d 886 (2d Cir. 1984). (Docket No. 6, Pl. Memo. at 8.)

Defendant disagrees, arguing that the medical record supports the ALJ's finding that there was no disability (see Docket No. 10, Def. Reply Memo. at 2-5). The defendant believes the ALJ properly did not afford controlling weight to Dr. Kucera's assessment because, defendant argues, there was no supporting medical evidence for his assessment (id. at 5; R. 23, 244). Defendant also contends that the ALJ properly relied upon the contrary assessment of the consultative physician Dr. Meng (Docket No. 8, Def. Memo. at 18). The ALJ considered Dr. Fineberg's assessment that plaintiff was "totally temporarily disabled [from] all employment," but found no basis for establishing that plaintiff was "disabled" because there was no assessment stating that plaintiff's condition would last twelve months as required by the statutory definition for disability, cf. 42 U.S.C. § 1382(a)(3), since Dr. Fineberg had only evaluated plaintiff once in August 2007 (Docket No. 10, Def. Reply Memo. at 6; R. 22, 366).

Plaintiff argues that Dr. Kucera has stated "several times" (Docket No. 6, Pl. Memo. at 6) that plaintiff was disabled due to his shoulder, but the record indicates only two instances (the

9

October 16, 2007 (R. 363-64; see also R. 367-68, 371-72), and May 2, 2008 (R. 369-70), with duplicates of the form from the first instance repeated in the record.

Social Security regulations provide that

"When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions:

"(1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. . . ,"

20 C.F.R. § 404.1516(e) and 20 C.F.R. § 416.912(e). While plaintiff argues that the ALJ should have made such an inquiry, the record here does not show that there was a conflict or ambiguity or that the report from Dr. Kucera was incomplete to require further contact by the ALJ. The ALJ ascertained the basis for Dr. Kucera's opinion.

As for Dr. Fineberg, however, there is no record of the duration of his finding that plaintiff was "totally temporarily disabled" and whether it lasted for at least twelve months to qualify plaintiff as being disabled. While the ALJ credited Dr. Fineberg's assessment (see Docket No. 10, Def. Reply Memo. at 6; R. 22), the ALJ did not inquire as to the duration of that assessment to see how temporary plaintiff's condition was. Under the Social Security regulations, the ALJ should have inquired further of Dr. Fineberg to test the viability of his assessment. This omission also impacted the ALJ's overall assessment of the treating physician's findings. On this basis the ALJ's decision should be **remanded** and defendant's

10

motion for judgment on the pleadings (Docket No. 7) should be **denied** and plaintiff's motion for judgment on the pleadings in his favor (Docket No. 6) should be **granted**.

For completeness, the other grounds will next be examined.

III.   ALJ's Reliance upon His Own Opinion as Against Medical Evidence

Plaintiff also argues that the ALJ erred in relying upon his own evaluation of the medical record and disregarded the medical findings of plaintiff's treating physicians (Docket No. 6, Pl. Memo. at 10-12). For the reasons just stated regarding needing further information from Dr. Fineberg, the ALJ should not have relied upon his own assessment of the medical record. A remand for obtaining expert medical evidence is in order, see Singletary v. Apfel, 981 F. Supp. 802, 807 (W.D.N.Y. 1997) (Larimer, Ch. J.) (see Docket No. 6, Pl. Memo. at 11).

IV.    Proper Consideration of Plaintiff's Subjective Complaints

Finally, plaintiff argues that the ALJ should have considered plaintiff's subjective complaints of pain (Docket No. 6, Pl. Memo. at 12), arguing that his complaints were supported by objective medical evidence and should therefore be given "great weight," Urtz v. Callahan, 965 F. Supp. 324, 328 (N.D.N.Y. 1997). He faults the ALJ for not assessing plaintiff's treatment, pain, and other restrictions, among the factors listed in SSR 96-7p (id.). Defendant, however, points to plaintiff's inconsistent statements in concluding that the ALJ properly evaluated plaintiff's credibility, for example giving differing causes for his disability (Docket No. 10, Def. Reply Memo. at 7-8; R. 52, 53, 424). With the remand to obtain further information from Dr. Fineberg, the ALJ also should re-examine plaintiff's subjective complaints in light of the amplified medical record.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further administrative proceedings. Defendant's motion for judgment on the pleadings (Docket No. 7) should be **denied** and plaintiff's motion for similar relief in his favor (Docket No. 6) should be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within fourteen (14) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective Dec. 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a). <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.</u>** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on <u>de novo</u> review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
October 13, 2010